## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### West Palm Beach Division
### www.flsb.uscourts.gov

In re:

**BARTHOLOMEW F. CASO,**

           **Debtor.**

_____/

**Case No. 13-12673-BKC-PGH**

**Chapter 11 Case**

## DISCLOSURE STATEMENT FOR
## PLAN OF REORGANIZATION
## BY BARTHOLOMEW F. CASO
## DATED June 12, 2015

**MERRILL PA**
**David Lloyd Merrill, Esq.**
2001 Palm Beach Lakes Blvd, Suite 410
West Palm Beach, Florida 33409
Phone: +1.561.689.6789
Facsimile: +1.561.689.6767
**ATTORNEYS FOR BARTHOLOMEW F. CASO**

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................6
    A. Overview of the Plan .................................................8
    B. Voting Instructions ................................................10

II. BACKGROUND OF THE DEBTOR ............................................10

III. THE CHAPTER 11 CASE ..................................................10
    A. Commencement of the Chapter 11 Case .........................11
    B. Retained Professionals ............................................11
    C. The Claims Process ...............................................11

IV. THE CHAPTER 11 PLAN ..................................................11
    A. Plan Overview ......................................................12
    B. Unclassified Claims ...............................................12
    C. Treatment of Claims and Interests .............................12

      1. Class 1(a) Allowed Secured Wells Fargo Bank, N.A. ("Wells") claim Re: 511 Cypress Crossing ...................................12

      2. Class 1(b) Allowed Secured Wells Fargo Bank, N.A. ("Wells") claim Re: 511 Cypress Crossing ............................................. 13

      3. Class 2   Allowed Secured America's Servicing Company ("ASC") claim re: 3261 SW 21st Street ........................................ 14

      4. Class 3   Allowed Secured Wells Fargo Bank, N.A. ("Wells") claim Re: 1610 N Federal Highway ......................................... 14

      5. Class 4   Allowed Secured Wells Fargo Bank, N.A. ("Wells") claim Re: 2901 N Halifax Avenue #214 ................................... 15

      6. Class 5   Allowed Secured Ocwen Loan Servicing, LLC ("Ocwen") claim Re: 1116 SW 10th Street ..................................... 15

      7. Class 6 Allowed Secured Deutsche Bank Trust Company Americas ("Deutsche") Claim Re: 206 S. Walnut Street .................... 16

      8. Class 7 Allowed Secured Ocwen Loan Servicing, LLC ("Ocwen") claim Re:  1070 SE 38th Terrace ...................................... 16

      9. Class 8 Allowed Secured OneWest Bank, FSB ("OneWest") claim Re:  1183 SE 40th Avenue ................................................ 17

      10. Class 9 Allowed Secured America's Servicing Company ("ASC") claim Re: 1216 SW 5th Avenue ...........................................17

2

11. Class 10(a) Allowed Secured First Lien Claim of Ocwen Loan Servicing, LLC ("Ocwen") re: 1807 SW 2nd Avenue ...........................18

12. Class 10(b) Allowed Secured Second Lien Claim of George Maler ("Maler") re: 1807 SW 2nd Avenue....................................18

13. Class 11. Allowed Ocwen Loan Servicing, LLC ("Ocwen") claim Re: 2201 SW 28th Street #38 ...........................................19

14. Class 12. Allowed Secured Ocwen Loan Servicing, LLC ("Ocwen") claim Re: 2418 SW 22nd Circle.........................................19

15. Class 13. Allowed Secured JPMorgan Chase, N.A. ("Chase") claim Re: 526-532 Orange Drive................................................20

16. Class 14. Allowed Secured George Maler ("Maler") claim Re: 4132 SE 28th Street ...................................................................20

17. Class 15. Allowed Secured George Maler ("Maler") claim Re: 3849 S Lake Drive #173 ........................................................21

18. Class 16. Allowed Secured George Maler ("Maler") claim Re: 3849 S Lake Drive #181 ........................................................21

19. Class 17. Allowed Secured George Maler ("Maler") claim Re: SW 21st Street....................................................................21

20. Class 18. Allowed Secured George Maler ("Maler") claim re: 7888 NW 83rd Court..................................................................22

21. Class 19. Allowed Secured Kenneth R. Splete ("Splete") claim Re: 4126 SE 28th Street. ...................................................22

22. Class 20. Allowed Secured Steven & Marilyn Abrams ("Abrams") claim Re: 1006 NW 10th Avenue. ..............................................23

23. Class 21. Allowed Secured Ford Motor Credit Company LLC ("Ford Motor") Claim re: 2007 Ford Expedition.................23

24. Class 22. Allowed Secured JPMorgan Chase Bank, N.A. ("Chase") claim Re: 2007 Volvo XC90. ...........................................24

25. Class 23. Allowed Secured Oak Lake Villas Homeowners Association, Inc. ("Oak Lake") claim Re: 2201 SW 28th Street #38. .....24

26. Class 24. Allowed Taxing Authority Claims.......................................24

27. Class 25. Allowed General Unsecured Claims ...............................25

3

D. Distributions Under the Plan ............................................................26

E. Executory Contracts and Unexpired Leases ..................................27

F. Modification/Revocation of the Plan ...............................................28

G. Effect of Confirmation ....................................................................29

H. Discharge, Exculpation, Injunction, Release and Limitation of Liability ..........29

I. Retention of Jurisdiction ..................................................................31

J. Transfers within Two Years Prior to Petition ..................................32

K. Miscellaneous Provisions ...............................................................32

L. Reservation of Rights Under Sections 1141(d)(5) and 350(a) .......33

V. CONFIRMATION OF PLAN ................................................................33

A. Confirmation Hearing .....................................................................33

B. Confirmation Standards and Solicitation of Votes .........................34

VI. FUNDING AND FEASIBILITY OF THE PLAN AND RISK FACTORS ..................35

A. Funding of the Plan ........................................................................35

B. Best Interests Test and Liquidation Analysis .................................35

C. Feasibility ......................................................................................37

D. Risk Factors Bearing Upon the Success or Failure of the Plan ......................37

VII. ALTERNATIVES TO THE PLAN ........................................................37

CONCLUSION ..........................................................................................38

## EXHIBIT INDEX

Exhibit A      The Plan

Exhibit B      Liquidation Analysis

Exhibit C      Projections

Exhibit D      Most Recently Filed Monthly Operating Report

## DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY BARTHOLOMEW F. CASO

THE PLAN PROPONENT RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION HEARING.

## I.    INTRODUCTION

BARTHOLOMEW F. CASO, (hereinafter, the "Plan Proponent" or the "Debtor") provides this Disclosure Statement (the "Disclosure Statement") to all creditors of the Debtor in order to permit such creditors to make an informed decision in voting to accept or reject the Chapter 11 Plan of Reorganization by the Plan Proponents (the "Plan") filed on **June 12, 2015** with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in connection with the above-captioned case (the "Chapter 11 Case"). A copy of the Plan is attached to this Disclosure Statement as Exhibit "A." Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan. Whenever the Words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

The Disclosure Statement is presented to certain holders of Claims against or Interests in Debtor in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable person, typical of the Debtor' creditors, to make an informed judgment whether to accept or reject the Plan. The Disclosure Statement may not be relied upon for any purpose other than that described above.

THE DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED. THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.

ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE PLAN PROPONENTS, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF DEBTORS AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN. ACCORDINGLY, THE PLAN PROPONENTS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING DEBTORS OR HIS FINANCIAL CONDITION IS ACCURATE OR COMPLETE. THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE, THE PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS IS CORRECT. THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. EACH CREDITOR IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.

A STATEMENT OF THE ASSETS AND LIABILITIES OF DEBTORS AS OF THE DATE OF THE COMMENCEMENT OF THE CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISERS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

Pursuant to the Bankruptcy Code, the Plan was filed with the Bankruptcy Court on **June 12, 2015** and this Disclosure Statement was filed thereafter. The Bankruptcy Court will schedule a hearing on approval of this Disclosure Statement and on confirmation of the Plan (the "Confirmation Hearing") to be held at the United States Bankruptcy Court for the Southern District of Florida, Flagler Waterview Building 1515 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401. At the Confirmation Hearing, the Bankruptcy Court will consider whether this Disclosure Statement and the Plan satisfy the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please contact Merrill PA, Attn: David Lloyd Merrill, Esq., 2001 Palm Beach Lakes Blvd, Suite 410, West Palm Beach, Florida 33409, Phone: (561) 689-6789, Facsimile: (561) 689-6767.

## A    Overview of the Plan

THE FOLLOWING IS A BRIEF SUMMARY OF THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN. THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN AND THE PLAN DOCUMENTS. CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN SECTION IV OF THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF. THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a Debtor's finances so as to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a Debtor's bankruptcy estate.

The Plan divides the Claims against and Interests in Debtor into Classes. Certain Claims — in particular, Administrative Claims— remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code. The Plan assigns all other Claims and Interests as described below.

| Class | Description | Status | Voting Status |
|---|---|---|---|
| Class 1 (a) | Allowed Secured Claim of Wells re: 511 Cypress Crossing | Impaired | Entitled to Vote |
| Class 1 (b) | Allowed Secured Claim of Wells re: 511 Cypress Crossing | Impaired | Entitled to Vote (in Class 25) |
| Class 2 | Allowed Secured Claim of ASC Re: 3261 SW 21st Street | Impaired | Entitled to Vote |
| Class 3 | Allowed Secured Claim of Wells re: 1610 N Federal Highway | Impaired | Entitled to Vote |
| Class 4 | Allowed Secured Claim of Wells re: 2901 N Halifax Avenue #214 | Impaired | Entitled to Vote |
| Class 5 | Allowed Secured Claim of Ocwen re: 1116 SW 10th Street | Impaired | Entitled to Vote |
| Class 6 | Allowed Secured Claim of Deutsche re: 206 S. Walnut Street | Impaired | Entitled to Vote |
| Class 7 | Allowed Secured Claim of Ocwen re: 1070 SE 38th Terrace | Impaired | Entitled to Vote |
| Class 8 | Allowed Secured Claim of OneWest re: 1183 SE 40th Avenue | Impaired | Entitled to Vote |
| Class 9 | Allowed Secured Claim of ASC re: 1216 SW 5th Avenue | Impaired | Entitled to Vote |
| Class 10 (a) | Allowed Secured Claims of Ocwen re: 1807 SW 2nd Avenue | Impaired | Entitled to Vote (in Class 25) |
| Class 10 (b) | Allowed Secured Claims of Maler re: 1807 SW 2nd Avenue | Unimpaired | Not Entitled to Vote |
| Class 11 | Allowed Secured Claim of Ocwen: re: 2201 SW 28th Street #38 | Impaired | Entitled to Vote |
| Class 12 | Allowed Secured Claim of Ocwen re: 2418 SW 22nd Circle | Impaired | Entitled to Vote (in Class 25) |
| Class 13 | Allowed Secured Claim of Chase re: 526-532 Orange Drive | Unimpaired | Not Entitled to Vote |
| Class 14 | Allowed Secured Claim of Maler re: 4132 SE 28th Street | Unimpaired | Not Entitled to Vote |
| Class 15 | Allowed Secured Claim of Maler re: 3849 S Lake Drive #173 | Unimpaired | Not Entitled to Vote |
| Class 16 | Allowed Secured Maler Claim re: 3849 S Lake Drive #181 | Unimpaired | Not Entitled to Vote |
| Class 17 | Allowed Secured Claim of Maler re: SW 21st Street | Unimpaired | Not Entitled to Vote |
| Class 18 | Allowed Secured Claim of Maler re: 7888 NW 83rd Court | Unimpaired | Not Entitled to Vote |
| Class | Description | Status | Voting Status |

| Class 19 | Allowed Secured Claim of Splete re: 4126 SE 28th Street | Unimpaired | Not Entitled to Vote |
|---|---|---|---|
| Class 20 | Allowed Secured Claim of Abrams re: 1006 NW 10th Avenue | Unimpaired | Not Entitled to Vote |
| Class 21 | Allowed Secured Claim of Ford Motor re: 2007 Ford Expedition | Unimpaired | Not Entitled to Vote |
| Class 22 | Allowed Secured Claim of Chase re: 2007 Volvo XC90 | Unimpaired | Not Entitled to Vote |
| Class 23 | Allowed Secured Claim of Oak Lake re: 2201 SW 28th Street #38 | Unimpaired | Not Entitled to Vote |
| Class 24 | Allowed Taxing Authority Claims | Unimpaired | Not Entitled to Vote |
| Class 25 | Allowed General Unsecured Claims | Impaired | Entitled to Vote |

Administrative claims shall be paid as follows:   To Merrill PA:   $15,000.00 (ESTIMATED) plus the retainer of $13,000.00 payable on the Effective Date.  All other administrative claims have been or will be paid in full prior to confirmation.

**The Effective Date of the Plan shall be 15 days after entry of a final, non-appealable Confirmation Order.**

**B.    Voting Instructions**

The Bankruptcy Code entitles only holders of Impaired Claims or Equity Interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of Claims or Equity Interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it. Holders of classes of Claims or Equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, also not entitled to vote on it. Holders of Claims valued at an unknown amount, including holders of Disputed Claims, shall not be entitled to vote on the Plan, except as provided below.

## II. <u>BACKGROUND OF THE DEBTOR</u>

The Debtor's business involves renting and managing the properties he owns to various individuals on an on-going basis, in addition to buying and selling properties for profit.  In addition the Debtor is a licensed mortgage banker deriving substantial income from that business.

## III. <u>THE CHAPTER 11 CASE</u>

**A.    Commencement of the Chapter 11 Case**

Prior to the Debtor filing for Chapter 11 bankruptcy protection on February 5, 2013 (the "<u>Petition Date</u>"), the Debtor had enjoyed a business serving as landlord

10

renting 19 residential real estate properties he owns, in addition to buying and selling real estate for profit as he has done for over 20 years. Furthermore he enjoys substantial income as a mortgage banker, writing various loans and earning commission income for his efforts. However, sharp declines in rental market rates and a decline in the mortgage banking business coupled with the crash in the real estate market resulted in a precipitous drop in the Debtor's income, creating an extraordinary cash flow problem for the Debtor that ultimately cascaded into other financial difficulties, including the ability to maintain his rental business' debt service.

## B.    Retained Professionals

The Bankruptcy Court authorized the Debtor to retain certain professionals in connection with the Chapter 11 Case. Specifically Debtor retained, and the Bankruptcy Court approved, the retention of Merrill PA as general bankruptcy counsel as authorized and approved by the bankruptcy court.

## C.    The Claims Process

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a Debtor to assert such claims, so that such claimant can receive distributions from the Debtor's bankruptcy case. The bankruptcy court establishes a "bar date" — a date by which creditors must file their claims, or else such creditors will not participate in the bankruptcy case or any distribution. After the filing of all claims, the Debtor evaluate such claims and can raise objections to them. These claims objections allow the Debtor to minimize claims against them, and thereby maximize the recovery to creditors. The deadline for filing proofs of Claims against Debtor, other than claims of governmental units and Administrative Claims, was June 12, 2013 (the "General Bar Date").

The Debtor has been reviewing, analyzing and resolving Claims on an ongoing basis as part of the claims reconciliation process. Nonetheless, additional claims may be asserted against the Debtor subsequent to the expiration of the Bar Date and the actual ultimate aggregate amount of Allowed Claims may differ significantly from the amounts used for the purposes of Debtor's estimates. Accordingly, the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

## IV. <u>CHAPTER 11 PLAN</u>

THE FOLLOWING IS A BRIEF SUMMARY OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN. THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A. THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN. CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN. SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED

TO REVIEW THE PLAN CAREFULLY. THE PLAN, IF CONFIRMED, WILL BE BINDING ON DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS.

## A.    Plan Overview

The Debtor believes that confirmation of the Plan provides the best opportunity for maximizing recoveries for his creditors. Moreover, the Debtor believes, and will demonstrate to the Court, that creditors will receive not less than the amount that they would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

## B.    Unclassified Claims

The following Administrative Claims, Priority Tax Claims and United States Trustee's Fees are Unimpaired under the Plan and will be treated as follows.

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims. All other holders of Allowed Administrative Claims (with the exception of the professionals who will be paid 100% of the amount allowed by the Bankruptcy Court upon application to the Bankruptcy Court and those Claims otherwise specifically dealt with in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Bankruptcy Court, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

Except to the extent that a holder of an Allowed Priority Tax Claim under section 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in the ordinary course of Debtor' business on the date of assessment of such Claim.

The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

## C. Treatment of Claims and Interests

**1.    Class 1 (a)— Allowed Secured First Lien Claim of Wells re: 511 Cypress Crossing, Wellington, FL (impaired and entitled to vote to accept or reject plan)**

*(a)    Definition of Class 1(a) — Allowed Secured First Lien Claim of Wells re: 511 Cypress Crossing, Wellington, FL*

Class 1(a) consists of the Allowed Secured First Lien Claim of Wells Fargo

12

Bank, N.A., in the amount of $531,226.90 and secured by the Debtor's property located at 511 Cypress Crossing, Wellington, FL.

(b)    Treatment of Class 1(a) — Allowed Secured First Lien Claim of Wells re: 511 Cypress Crossing, Wellington, FL

Unless otherwise agreed to by the Debtor and Wells Fargo Bank, N.A., on the Effective Date, Class 1 shall receive payment in accordance with the Mortgage Modification Mediation ("MMM") program. To the extent the appropriate motions are filed and orders entered, the Parties (Defined as the Class 1a Creditor and the Debtor) shall timely comply with all requirements of the Order of Referral to MMM and all Administrative Orders and Local Rules regarding MMM. While the MMM is pending and until the trial/interim payment plan or the permanent mortgage modification/permanent payment is established by the parties, the Debtor has included a post-effective date plan payment, absent Court order to the contrary, of no less than that set forth in the First Alternative above as a good faith adequate protection payment to the Class 1(a) Creditor. Until the MMM is completed and the Final Report of Loan Mitigation Mediator is filed, any objection to the Lender's Proof of Claim, if any, on the real property described above shall be held in abeyance as to the regular payment and mortgage arrearage stated in the Proof of Claim only. The Debtor shall assert any and all other objections to the Proof of Claim prior to confirmation of the plan or modified plan. If the Debtor, co-obligor/co-borrower or other third party (if applicable) and the Class 1(a) Creditor agree to a settlement as a result of any pending MMM, the Debtor will file a Motion to Approve Loan Mitigation Agreement with Class 1(a) Creditor no later than 14 calendar days following settlement. Once the settlement is approved by the Court, the settlement will be deemed to control and serve as the means by which this Class will be paid and the Lender shall have leave to amend its Proof of Claim to reflect the settlement reached. The parties will then timely comply with any and all requirements necessary to complete the settlement. In the event the Debtor receives any financial benefit from the Class 1(a) Creditor as part of any agreement, the Debtor shall immediately disclose the financial benefit to the Court and all interested parties. If the Class 1(a) Creditor and the Debtor fail to reach a settlement, then the Debtor shall resume making regular payments and cure any arrearage over a 10 year period ("Second Alternative") which payment schedule will be deemed to control and serve as the means by which this Class will be paid or; within 14 days after the Final Report of the Mortgage Modification Mediator is filed, the Debtor will have the right to elect that the real property will be surrendered in which case the Class 1(a) Creditor will have *in rem* relief from the automatic stay as to the real property being surrendered. Notwithstanding the foregoing, the Class 1(a) Creditor may file a motion to confirm that the automatic stay is not in effect as to the real property if either the First or Second Alternatives are not complied with, at which time the Debtor may elect to surrender the property. Confirmation of the plan will be without prejudice to the *in rem* assertion of any rights the Class 1(a) Creditor has to address payment of its Proof of Claim to the extent not modified in accordance with the Second Alternative above. The Class 1(a) Claim is impaired.

**2      Class 1 (b)— Allowed Secured Second Lien Claim of Wells re: 511**

**Cypress Crossing, Wellington, FL (impaired and entitled to vote to accept or reject plan with General Unsecured Class below)**

  *(a) Definition of Class 1(b) — Allowed Secured Second Lien Claim of Wells re: 511 Cypress Crossing, Wellington, FL.*

  Class 1 (b) consists of the 100% undersecured Second Lien Claim of Wells in the amount of $148,470.46 previously secured by the Debtor's property located at 511 Cypress Crossing, Wellington, Florida which is valued at $344,614.00, with the entire balance being treated as a general unsecured claim in Class 25, as per pending order not yet entered.

  *(b) Treatment of Class 1(b) — Allowed Secured Second Lien Claim of Wells re: 511 Cypress Crossing, Wellington, FL.*

  There is currently pending a Motion to Value on this property which has yet to be ruled upon. However, the value of the property leaves this claim in the amount of $148,470.46 100% undersecured, which in turn will leave result in this claim being paid entirely as an allowed general unsecured claim, and will vote as a part of this class.    The Class 1 (b) Claim is impaired.

 **3 Class 2 — Allowed Secured Claim of ASC re: 3261 SW 21st Street, Okeechobee, FL (impaired and entitled to vote to accept or reject plan)**

  *(a) Definition of Class 2 — Allowed Secured Claim of ASC re: 3261 SW 21st Street, Okeechobee, FL.*

  Class 2 consists of the Allowed Secured Claim of ASC in the amount of $47,407.00 and secured by the Debtor's property located at 3261 SW 21st Street, Okeechobee, Florida which is valued at $47,407.00, with the balance being treated as a general unsecured claim in Class 25, as per the pending agreed order not yet entered.

  *(b) Treatment of Class 2— Allowed Secured Claim of ASC re: 3261 SW 21st Street, Okeechobee, FL.*

  Unless otherwise agreed to by the Debtor and ASC, on the Effective Date, Class 2 shall receive $47,407.00, paid in 271 monthly payments starting on the October 1, 2014 and the 1st of the month thereafter the Effective Date of $299.00 to ASC at the rate of 5.25% interest. **This property earns $600.00 per month in rent. Less taxes of $94.97 per month, and insurance of $66.76 per month leaves net monthly income of $114.48 proving the feasibility of this property.** The Class 2 Claim is impaired.

 **4 Class 3 — Allowed Secured Claim of Wells re: 1610 N Federal Highway, Lake Worth, FL (impaired and entitled to vote to accept or reject plan)**

  *(a) Definition of Class 3 — Allowed Secured Claim of Wells re:*

14

*1610 N Federal Highway, Lake Worth, FL.*

Class 3 consists of the Allowed Secured Claim of Wells in the amount of $83,650.00 and secured by the Debtor's property located at 1610 N Federal Highway, Lake Worth, Florida which was valued at $83,650.00, with the balance being treated as a general unsecured claim in Class 25.

(b)    *Treatment of Class 3 — Allowed Secured Claim of Wells re: 1610 N Federal Highway, Lake Worth, FL*

Unless otherwise agreed to by the Debtor and Wells, on the Effective Date, Class 3 shall receive $83,650.00, paid in 360 monthly payments starting the 1st of the month after the Effective Date of $461.92 at the rate of 5.25% interest, with the balance being treated as a general unsecured claim in Class 25. **This property earns $1,200.00 per month in rent. Less taxes of $228.50 per month and insurance of $161.42 per month leaves net monthly income of $348.16 proving the feasibility of this property.** The Class 3 Claim is impaired.

**5.    Class 4 — Allowed Secured Claim of Wells re: 2901 North Halifax Avenue #214, Daytona Beach, FL (impaired and entitled to vote to accept or reject plan)**

(a)    *Definition of Class 4 — Allowed Secured Claim of Wells re: 2901 North Halifax Avenue #214, Daytona Beach, FL.*

Class 4 consists of the Allowed Secured Claim of Wells in the amount of $56,335.00 secured by the Debtor's property located at 2901 North Halifax Avenue #214, Daytona Beach, Florida valued at $56,335.00, with the balance being treated as a general unsecured claim in Class 25.

(b)    *Treatment of Class 4 — Allowed Secured Claim of Wells re: 2901 North Halifax Avenue #214, Daytona Beach, FL.*

Unless otherwise agreed to by the Debtor and Wells, on the Effective Date, Class 4 shall receive $56,335.00, paid in 360 monthly payments starting the 1st of the month after the Effective Date of $311.08 at the rate of 5.25% interest, with the balance being treated as a general unsecured claim in Class 25. **This property earns $850.00 per month in rent. Less taxes of $102.10 per month, insurance and HOA fees of $285.00 per month leaves net monthly income of $151.82 proving the feasibility of this property**. The Class 4 Claim is impaired.

**6.    Class 5 — Allowed Secured Claim of Ocwen re: 1116 SW 10th Street, Okeechobee, FL (impaired and entitled to vote to accept or reject plan)**

(a)    *Definition of Class 5 — Allowed Secured Claim of Ocwen re: 1116 SW 10th Street, Okeechobee, FL.*

Class 5 consists of the Allowed Secured Claim of Ocwen in the amount of

$62,388.00 secured by the Debtor's property located at 1116 SW 10th Street, Okeechobee, Florida valued at $62,388.00, with the balance being treated as a general unsecured claim in Class 25.

> (b)    *Treatment of Class 5 — Allowed Secured Claim of Ocwen re: 1116 SW 10th Street, Okeechobee, FL.*

Unless otherwise agreed to by the Debtor and Ocwen, on the Effective Date, Class 5 shall receive $62,388.00, paid in 360 monthly payments starting the 1st of the month after the Effective Date of $344.51 at the rate of 5.25% interest, with the balance being treated as a general unsecured claim in Class 25. **This property earns $700.00 per month in rent. Less taxes of $148.86 per month and insurance of $42.00 per month leaves net monthly income of $164.63 proving the feasibility of this property.** The Class 5 Claim is impaired.

### 7.    Class 6 — Allowed Secured Claim of Deutsche re: 206 South Walnut Street, Greensboro, Georgia (impaired and entitled to vote to accept or reject plan)

> (a)    *Definition of Class 6 — Allowed Secured Claim of Deutsche re: 206 South Walnut Street, Greensboro, Georgia.*

Class 6 consists of the Allowed Secured Claim of Deutsche Bank Trust Company Americas as Trustee for RALI 2005-QA11 c/o Ocwen Loan Servicing, LLC in the amount of $50,000.00 secured by the Debtor's property located at 206 South Walnut Street, Greensboro, Georgia valued at $50,000.00, with the balance being treated as a general unsecured claim in Class 25.

> (b)    *Treatment of Class 6 — Allowed Secured Claim of Deutsche re: 206 South Walnut Street, Greensboro, Georgia.*

Unless otherwise agreed to by the Debtor and Deutsche, on the Effective Date, Class 6 shall receive $50,000.00, paid in 360 monthly payments starting on the 1st of the month of $276.10 at the rate of 5.25% interest, with the balance being treated as a general unsecured claim in Class 25. **This property earns $750.00 per month in rent. Less taxes of $102.02 per month and insurance of $108.00 per month leaves net monthly income of $263.88 proving the feasibility of this property.** The Class 6 Claim is impaired.

### 8.    Class 7 — Allowed Secured Claim of Ocwen Loan Servicing, LLC re: 1070 SE 38th Terrace, Okeechobee, FL (impaired and entitled to vote to accept or reject plan)

> (a)    *Definition of Class 7 — Allowed Secured Claim of Ocwen Loan Servicing, LLC re: 1070 SE 38th Terrace, Okeechobee, FL.*

Class 7 consists of the Allowed Secured Claim of Ocwen Loan Servicing, LLC in the amount of $95,354.00 secured by the Debtor's property located at 1070 SE 38th

Terrace, Okeechobee, Florida valued at $95,354.00, with the balance being treated as a general unsecured claim in Class 25.

> (b)    Treatment of Class 7 — Allowed Secured Claim of Ocwen Loan Servicing, LLC re: 1070 SE 38th Terrace, Okeechobee, FL.

Unless otherwise agreed to by the Debtor and Ocwen Loan Servicing, LLC, on the Effective Date, Class 7 shall receive $95,354.00, paid in 360 monthly payments starting the 1st of the month after the Effective Date in the amount of $526.55 at the rate of 5.25% interest, with the balance being treated as a general unsecured claim in Class 25. **This property earns $800.00 per month in rent.  Less taxes of $161.75 per month and insurance of $75.58 per month leaves net monthly income of $36.12 proving the feasibility of this property**. The Class 7 Claim is impaired.

9.    **Class 8 — Allowed Secured Claim of OneWest re: 1183 SE 40th Avenue, Okeechobee, FL (impaired and entitled to vote to accept or reject plan)**

> (a)    Definition of Class 8 — Allowed Secured Claim of OneWest re: 1183 SE 40th Avenue, Okeechobee, FL.

Class 8 consists of the Allowed Secured Claim of OneWest in the amount of $100,341.00 secured by the Debtor's property located at 1183 SE 40th Avenue, Okeechobee, Florida valued at $100,341.00, with the balance being treated as a general unsecured claim in Class 25.

> (b)    Treatment of Class 8 — Allowed Secured Claim of OneWest re: 1183 SE 40th Avenue, Okeechobee, FL.

Unless otherwise agreed to by the Debtor and OneWest, on the Effective Date, Class 8 shall receive $100,341, paid in 360 monthly payments starting the 1st of the month after the Effective Date in the amount of $554.09 at the rate of 5.25% interest, with the balance being treated as a general unsecured claim in Class 25. **This property earns $1,000.00 per month in rent.  Less taxes of $154.25 per month and insurance of $63.00 per month leaves net monthly income of $228.66 proving the feasibility of this property**. The Class 8 Claim is impaired.

10.    **Class 9 — Allowed Secured Claim of ASC re: 1216 SW 5th Avenue, Okeechobee, FL (impaired and entitled to vote to accept or reject plan)**

> (a)    Definition of Class 9 — Allowed Secured Claim of ASC re: 1216 SW 5th Avenue, Okeechobee, FL.

Class 9 consists of the Allowed Secured Claim of ASC in the amount of $33,395.00 secured by the Debtor's property located at 1216 SW 5th Avenue, Okeechobee, Florida valued at $33,395.00, with the balance being treated as a general unsecured claim in Class 25.

*(b)    Treatment of Class 9 — Allowed Secured Claim of ASC re: 1216 SW 5th Avenue, Okeechobee, FL.*

Unless otherwise agreed to by the Debtor and ASC, on the Effective Date, Class 9 shall receive $33,395.00, paid in 360 monthly payments starting the 1st of the month after the Effective Date in the amount of $187.56 at the rate of 5.25% interest, with the balance being treated as a general unsecured claim in Class 25. **This property earns $600.00 per month in rent. Less taxes of $90.95 per month and insurance of $36.08 per month leaves net monthly income of $285.41 proving the feasibility of this property.** The Class 9 Claim is impaired.

**11    Class 10(a) — Allowed Secured First Lien Claim of Ocwen re: 1807 SW 2nd Avenue, Okeechobee, FL (impaired and entitled to vote to accept or reject plan)**

*(a)    Definition of Class 10(a) — Allowed Secured First Lien Claim of Ocwen re: 1807 SW 2nd Avenue, Okeechobee, FL.*

Class 10(a) consists of the Allowed Secured First Lien Claim of Ocwen in the amount of $40,000.00 secured by the Debtor's property located at 1807 SW 2nd Avenue, Okeechobee, Florida valued at $40,000.00, with the balance being treated as a general unsecured claim in Class 25.

*(b)    Treatment of Class 10(a) — Allowed Secured First Lien Claim of Ocwen re: 1807 SW 2nd Avenue, Okeechobee, FL.*

Unless otherwise agreed to by the Debtor and Ocwen, on the Effective Date, Class 10 (a) shall receive $40,000.00, paid in 360 monthly payments starting the 1st of the month after the Effective Date in the amount of $220.88 to Ocwen at the rate of 5.25% interest. **This property earns $550.00 per month in rent. Less taxes of $155.15 per month, insurance of $52.12 per month, and payment of second lien claim of $104.14 leaves net monthly income of $17.71 proving the feasibility of this property.** The Class 10(a) Claim is impaired.

**12    Class 10(b) — Allowed Secured Second Lien Claim of Maler re: 1807 SW 2nd Avenue, Okeechobee, FL (unimpaired and not entitled to vote to accept or reject plan)**

*(a)    Definition of Class 10(b) — Allowed Secured Second Lien Claim of Maler re: 1807 SW 2nd Avenue, Okeechobee, FL.*

Class 10(b) consists of the Allowed Secured Second Lien Claim of Maler in the amount of $40,000.00 secured by the Debtor's property located at 1807 SW 2nd Avenue, Okeechobee, Florida valued at $40,000.00.

*(b)    Treatment of Class 10(b) — Allowed Secured Second Lien Claim of Maler re: 1807 SW 2nd Avenue, Okeechobee, FL.*

18

Unless otherwise agreed to by the Debtor and Maler, on the Effective Date, Class 10(b) shall continue to receive payment in accordance with the loan documents, as the Debtor is current on the mortgage, in the amount $104.14 until paid in full and relief from stay will be granted. **This property earns $550.00 per month in rent. Less taxes of $155.15 per month, insurance of $52.12 per month, and payment of first lien claim of $220.88 leaves net monthly income of $17.71 proving the feasibility of this property**. The Class 10(b) Claim is unimpaired.

**13    Class 11 — Allowed Secured Claim of Ocwen re: 2201 SW 28th Street #38, Okeechobee, FL (impaired and entitled to vote to accept or reject plan)**

*(a)    Definition of Class 11 — Allowed Secured Claim of Ocwen re: 2201 SW 28th Street #38, Okeechobee, FL.*

Class 11 consists of the Allowed Secured Claim of Ocwen in the amount of $40,031.00 secured by the Debtor's property located at 2201 SW 28th Street #38, Okeechobee, Florida valued at $40,031.00, with the balance being treated as a general unsecured claim in Class 25.

*(b)    Treatment of Class 11 — Allowed Secured Claim of Ocwen re: 2201 SW 28th Street #38, Okeechobee, FL.*

Unless otherwise agreed to by the Debtor and Ocwen, on the Effective Date, Class 11 shall receive $40,031.00, paid in 360 monthly payments payable the 1st of the month after the Effective Date in the amount of $221.05 at the rate of 5.25% interest, with the balance being treated as a general unsecured claim in Class 25. **This property earns $700.00 per month in rent. Less taxes of $71.92 per month, insurance of $16.83 per month, and HOA fees of $100.00 leaves net monthly income of $290.20 proving the feasibility of this property**. The Class 11 Claim is impaired.

**14    Class 12 — Allowed Secured Claim of Ocwen re: 2418 SW 22nd Circle, Okeechobee, FL (impaired and entitled to vote to accept or reject plan)**

*(a)    Definition of Class 12 — Allowed Secured Claim of Ocwen re: 2418 SW 22nd Circle, Okeechobee, FL.*

Class 12 consists of the Allowed Secured Claim of Ocwen in the amount of $90,657.00 secured by the Debtor's property located at 2418 SW 22nd Circle, Okeechobee, Florida valued at $90,657.00, with the balance being treated as a general unsecured claim in Class 25.

*(b)    Treatment of Class 12 — Allowed Secured Claim of Ocwen re: 2418 SW 22nd Circle, Okeechobee, FL.*

Unless otherwise agreed to by the Debtor and Ocwen, on the Effective Date, Class

19

12 shall receive $90,657.00, paid in 360 monthly payments payable the 1st of the month after the Effective Date in the amount of $500.61 at the rate of 5.25% interest, with the balance being treated as a general unsecured claim in Class 25. **This property earns $1,200.00 per month in rent. Less taxes of $244.42 per month and insurance of $104.17 per month leaves net monthly income of $350.80 proving the feasibility of this property.** The Class 12 Claim is impaired.

**15.    Class 13 — Allowed Secured Claim of Chase re: 526-532 Orange Drive, Unit #32, Altamonte Springs, Florida (impaired and entitled to vote to accept or reject plan)**

> (a)    *Definition of Class 13 — Allowed Secured Claim of Chase re: 526-532 Orange Drive, Unit #32, Altamonte Springs, Florida.*

Class 13 consists of the Allowed Secured Claim of Chase in the amount of $6,039.91 secured by the Debtor's property located at : 526-532 Orange Drive, Unit #32, Altamonte Springs, Florida valued at $23,316.00.

> (b)    *Treatment of Class 13 — Allowed Secured Claim of Chase re: 526-532 Orange Drive, Unit #32, Altamonte Springs, Florida.*

Unless otherwise agreed to by the Debtor and Chase, on the Effective Date, Class 13 shall receive $6,039.91 paid in 60 monthly payments payable the 1st of the month after the Effective Date in the amount of $114.67 at the rate of 5.25% interest. **This property earns $600.00 per month in rent. Less taxes of $46.60 per month and condominium fees of $249.52 per month leaves net monthly income of $189.21 proving the feasibility of this property.** The Class 13 Claim is impaired.

**16.    Class 14 — Allowed Secured Claim of Maler re: 4132 SE 28th Street, Okeechobee, FL (unimpaired and not entitled to vote to accept or reject plan)**

> (a)    *Definition of Class 14 — Allowed Secured Claim of Maler re: 4132 SE 28th Street, Okeechobee, FL.*

Class 14 consists of the Allowed Secured Claim of George Maler secured by the Debtor's property located at 4132 SE 28th Street, Okeechobee, Florida.

> (b)    *Treatment of Class 14 — Allowed Secured Claim of Maler re: 4132 SE 28th Street, Okeechobee, FL.*

Unless otherwise agreed to by the Debtor and Maler, on the Effective Date, Class 14 shall continue to receive payment in accordance with the loan documents, as the Debtor is current on the mortgage, in the amount $104.14 until paid in full and relief from stay will be granted. **This property earns $500.00 per month in rent. Less taxes of $65.37 per month and insurance of $6.25 per month leaves net monthly income of $324.24 proving the feasibility of this property.** The Class 14 Claim is impaired.

20

17. **Class 15 — Allowed Secured Claim of Maler re: 3849 S Lake Drive #173, Tampa, FL (unimpaired and not entitled to vote to accept or reject plan)**

    (a)    *Definition of Class 15 — Allowed Secured Claim of Maler re: 3849 S Lake Drive #173, Tampa, FL.*

Class 15 consists of the Allowed Secured Claim of George Maler secured by the Debtor's property located at 3849 S Lake Drive #173, Tampa, Florida.

    (b)    *Treatment of Class 15 — Allowed Secured Claim of Maler re: 3849 S Lake Drive #173, Tampa, FL.*

Unless otherwise agreed to by the Debtor and Maler, on the Effective Date, Class 15 shall continue to receive payment in accordance with the loan documents, as the Debtor is current on the mortgage, in the amount of $104.14 until paid in full and relief from stay will be granted. **This property earns $550.00 per month in rent. Less taxes of $38.92 per month and condominium fees of $218.13 per month leaves net monthly income of $188.81 proving the feasibility of this property.** The Class 15 Claim is unimpaired.

18. **Class 16 — Allowed Secured Claim of Maler re: 3849 S Lake Drive #181, Tampa, FL (unimpaired and not entitled to vote to accept or reject plan)**

    (a)    *Definition of Class 16 — Allowed Secured Claim of Maler re: 3849 S Lake Drive #181, Tampa, FL.*

Class 16 consists of the Allowed Secured Claim of George Maler secured by the Debtor's property located at 3849 S Lake Drive #181, Tampa, Florida.

    (b)    *Treatment of Class 16 — Allowed Secured Claim of Maler re: 3849 S Lake Drive #181, Tampa, FL.*

Unless otherwise agreed to by the Debtor and Maler, on the Effective Date, Class 16 shall continue to receive payment in accordance with the loan documents, as the Debtor is current on the mortgage, in the amount of $104.14 until paid in full and relief from stay will be granted. **This property earns $550.00 per month in rent. Less taxes of $38.92 per month condominium fees of $218.13 per month leaves net monthly income of $188.81 proving the feasibility of this property.** The Class 16 Claim is unimpaired.

19    **Class 17 — Allowed Secured Claim of Maler re: vacant land located at SW 21st Street, Okeechobee, FL (unimpaired and not entitled to vote to accept or reject plan)**

    (a)    *Definition of Class 17 — Allowed Secured Claim of Maler re: vacant land located at SW 21st Street, Okeechobee, FL.*

21

Class 17 consists of the Allowed Secured Claim of George Maler secured by the Debtor's vacant land located at SW 21st Street, Okeechobee, Florida, also known as CC#1-30-37-35-0010-00110.

    (b)    *Treatment of Class 17 — Allowed Secured Claim of Maler re: vacant land located at SW 21st Street, Okeechobee, FL.*

Unless otherwise agreed to by the Debtor and Maler, on the Effective Date, Class 17 shall continue to receive payment in accordance with the loan documents, as the Debtor is current on the mortgage, in the amount of $104.14 until paid in full and relief from stay will be granted. The insurance on this property is $625.00 per month and taxes $18.35 per month. The Class 17 Claim is unimpaired.

**20.    Class 18 — Allowed Secured Claim of Maler re: 7888 NW 83rd Court, Okeechobee, Florida (unimpaired and not entitled to vote to accept or reject plan)**

    (a)    *Definition of Class 18 — Allowed Secured Claim of Maler re: 7888 NW 83rd Court, Okeechobee, FL.*

Class 18 consists of the Allowed Secured Claim of George Maler secured by the Debtor's property located at 7888 NW 83rd Court, Okeechobee, Florida.

    (b)    *Treatment of Class 18 — Allowed Secured Claim of Maler re: 7888 NW 83rd Court, Okeechobee, Florida.*

Unless otherwise agreed to by the Debtor and Maler, on the Effective Date, Class 18 shall continue to receive payment in accordance with the loan documents, as the Debtor is current on the mortgage, in the amount of $104.14 until paid in full and relief from stay will be granted. The insurance on this property is $625.00 per month and taxes of $16.92 per month. The Class 18 Claim is unimpaired.

**21.    Class 19 — Allowed Secured Claim of Kenneth R. Splete re: 4126 SE 28th Street, Okeechobee, Florida (unimpaired and not entitled to vote to accept or reject plan)**

    (a)    *Definition of Class 19 — Allowed Secured Claim of Kenneth R. Splete re: 4126 SE 28th Street, Okeechobee, Florida.*

Class 19 consists of the Allowed Secured Claim of Kenneth R. Splete in the amount of $30,000.00 secured by the Debtor's property located at 4126 SE 28th Street, Okeechobee, Florida purchased at $30,000.00.

    (b)    *Treatment of Class 19 — Allowed Secured Claim of Kenneth R. Splete re: 4126 SE 28th Street, Okeechobee, Florida.*

Unless otherwise agreed to by the Debtor and Kenneth R. Splete, on the Effective Date, Class 19 shall continue to receive $30,000.00, payable the 1st of the month

after the Effective Date in the amount of $300.00 until paid in full. **This property earns $600.00 per month in rent. Less taxes of $57.04 per month and insurance of $6.25 per month leaves net monthly income of $236.71 proving the feasibility of this property**. The Class 19 Claim is unimpaired.

**22     Class 20 — Allowed Secured Claim of Steven & Marilyn Abrams re: 1006 NW 10th Avenue, Okeechobee, Florida (impaired and entitled to vote to accept or reject plan)**

(a)     *Definition of Class 20 — Allowed Secured Claim of Steven & Marilyn Abrams re: 1006 NW 10th Avenue, Okeechobee, Florida.*

Class 20 consists of the Allowed Secured Claim of Steven & Marilyn Abrams in the amount of $32,400.00 secured by the Debtor's property located at 1006 NW 10th Avenue, Okeechobee, Florida valued at $32,400.00.

(c)     *Treatment of Class 20 — Allowed Secured Claim of Steven & Marilyn Abrams re: 1006 NW 10th Avenue, Okeechobee, Florida.*

Unless otherwise agreed to by the Debtor and Steven & Marilyn Abrams, on the Effective Date, Class 20 shall receive $32,400.00, paid in 180 monthly payments payable the 1st of the month after the Effective Date in the amount of $260.46 at the rate of 5.25% interest. **This property is proposed to earn $1,000.00 per month in rent. Less taxes of $43.10 per month and insurance of $102.00 per month leaves net monthly income of $594.44 proving the feasibility of this property.** The Class 20 Claim is impaired.

**23     Class 21 — Allowed Secured Claim of Ford Motor Credit Company LLC re: 2007 Ford Expedition (impaired and entitled to vote to accept or reject plan)**

(a)     *Definition of Class 21 — Allowed Secured Claim of Ford Motor re: 2007 Ford Expedition*

Class 21 consists of the Allowed Secured Claim of Ford Motor in the amount of $13,000.00 secured by the Debtor's 2007 Ford Expedition value at $13,000.00, with the balance being treated as a general unsecured claim in Class 25.

(b)     *Treatment of Class 21 — Allowed Secured Claim of Ford Motor re: 2007 Ford Expedition*

Unless otherwise agreed to by the Debtor and Ford Motor, on the Effective Date, Class 21 shall receive $13,000.00 less all payments paid by the Debtor post-petition in the amount of $9,352.00 equals $3,648.00 at 5.25% interest for a monthly payment of $160.44, with the balance being treated as a general unsecured claim in Class 25. The Class 21 Claim is impaired.

24    **Class 22 — Allowed Secured Claim of JP Morgan Chase Bank, N.A. re: 2007 Volvo XC90 (unimpaired and not entitled to vote to accept or reject plan)**

(a)    *Definition of Class 22 — Allowed Secured Claim of Chase re: 2007 Volvo XC90.*

Class 22 consists of the Allowed Secured Claim of Chase secured by the Debtor's 2007 Volvo XC90.

(b)    *Treatment of Class 22 — Allowed Secured Claim of Chase re: 2007 Volvo XC90.*

Unless otherwise agreed to by the Debtor and Chase, on the Effective Date, Class 22 shall continue to receive payment in accordance with the loan documents, as the Debtor is current on his payments, in the amount of $371.13 until paid in full.  The Class 22 Claim is unimpaired.

25    **Class 23 — Allowed Secured Claim of Oak Lake Villas Homeowners Association, Inc. ("Oak Lake") re: 2201 SW 28th Street #38, Okeechobee, Florida (impaired and entitled to vote to accept or reject plan)**

(a)    *Definition of Class 23 — Allowed Secured Claim of Oak Lake re: 2201 SW 28th Street #38, Okeechobee, Florida.*

Class 23 consists of the Allowed Secured Claim of Oak Lake secured by the Debtor's property located at 2201 SW 28th Street #38, Okeechobee, Florida.

(b)    *Treatment of Class 23 — Allowed Secured Claim of Oak Lake re: 2201 SW 28th Street #38, Okeechobee, Florida.*

Unless otherwise agreed to by the Debtor and Oak Lake, on the Effective Date, Class 23 shall receive $440.00 in full settlement of its claims. The Class 23 Claim is impaired.

26    **Class 24 — Taxing Authority Claims (Impaired and entitled to vote to accept or reject the Plan)**

(a)    *Definition of Class 24 — Taxing Authority Claims*

Class 24 consists of the claims of the Internal Revenue Service, Claim No.: 8-4 and of the Florida Department of Revenue, Claim 38-1.

(b)    *Treatment of Class 24 — Allowed Taxing Authority Claims*

On the Effective Date, the Internal Revenue Service ("IRS") and Florida Department of Revenue ("FLDoR") will be treated as per the below.  Accordingly tax claims will be paid as they come due in compliance with 11 U.S.C. §1129(a)(9). The Debtor is and will remain current in the filing of his tax returns as they become

due.  Class 24 claims are impaired.

**The Priority Claims related to 8-4 and 38-1 have previously been paid in full and are not owed by this Debtor.  The Debtor will file an objection to these claims presuming they are not withdrawn before the deadline to file objections to proof of claims.  Any remaining amount due shall be treated as a general unsecured claim in Class 24 in compliance with 11 U.S.C. §1129(a)(9)(c).**

### 27.    Class 25 — Allowed General Unsecured Claims (impaired and entitled to vote to accept or reject plan)

#### (a) Definition of Class 25 — Allowed General Unsecured Claims

Class 25 consists of the Allowed General Unsecured claims herein as defined pursuant to 11 U.S.C. §502.  This Class does not include any general unsecured claims that have been paid in full prior to the Confirmation Date or that are being paid as part of another Class herein.  Class 25 Claims are impaired.

#### (b) Treatment of Class 25 Allowed General Unsecured Claims

On the Effective Date, holder of a Class 25 Claim will be paid 7.5% of their claim.  Class 25 Claims total $1,079,480, which will be paid a total of $81,000.00 payable $1,350.00 per month beginning in month 1 through Month 60 of the Plan. In the event any secured or administrative claims are paid in full prior to month 60, payment in the amount of the secured or administrative claim will be paid to general unsecured commencing the month after such full payment and in an amount equaling at least 90% of the prior payment made to such secured or administrative claimant.  Class 25 Claims are impaired.

### 28.    Class 26 — Claim of TD Auto Finance ("TD Auto") re: 2006 Dodge Ram VIN: 3DML48C56G191682 (impaired and entitled to vote as a part of Class 25 to accept or reject plan)

#### (a)    Definition of Class 26 — Claim of TD Auto Finance ("TD Auto") re: 2006 Dodge Ram VIN: 3DML48C56G191682

Class 26 consists of the Claim of TD secured by a 2006 Dodge Aram truck that the Debtor cosigned but has never driven.  This vehicle has mbeen missing for nearly five years and the Debtor has no idea of its whereabouts.

#### (b)    Treatment of Class 26 — Claim of TD Auto Finance ("TD Auto") re: 2006 Dodge Ram VIN: 3DML48C56G191682.

Unless otherwise agreed to by the Debtor and TD Auto, on the Effective Date, the Debtor shall surrender the Dodge Ram and the claim will be treated and vote solely as a part of Class 25. The Class 25 Claim is impaired.

### D.    Distributions Under the Plan

Subject to Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan shall be made monthly by the Reorganized Debtor to the holder of each Allowed Claim or Allowed Equity Interest at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Effective Date unless the Debtor or Reorganized Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall be made on a monthly basis by check drawn on a domestic bank or by wire transfer. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a Distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of 1/2 or greater shall be rounded to the next higher whole number and fractions of less than 1/2 shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in Section 6.02(f) of the Plan.

Any distributions of Cash or other property under the Plan that is unclaimed for a period of six (6) months after the date paid shall constitute Unclaimed Funds and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

Unless otherwise provided herein, all Initial Distributions and deliveries to be made on the Effective Date shall be made on that date ("Initial Distribution Date"). Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

**The Effective Date of the Plan shall be 15 days after entry of a final, non-appealable Confirmation Order.**

### 1.    Objections to Claims

Subject to applicable law, from and after the Effective Date, the Reorganized Debtors will have the authority to file, settle, compromise, withdraw, arbitrate or litigate to judgment objections to Claims pursuant to applicable procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Plan. Any and all objections to any claim must be filed prior to the Objection Deadline, or as otherwise ordered by the Court, or with respect to rejection claims, prior to the Objection to Rejection Claims Deadline. An Objection to the allowance of a Claim or Interest will be in writing and may be filed with the Bankruptcy Court by the Debtors or the Reorganized Debtors, at any time on or before the applicable claim objection deadline. The failure by the Debtors

to object to any Claim or Interest for voting purposes will not be deemed a waiver of the right to object to, or re-examine, any such Claim in whole or in part.

### 1. Distributions Withheld for Disputed Claims

On the Initial Distribution Date and each subsequent distribution date, the Reorganized Debtors shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts or as estimated by the Debtors or the Court in accordance with Section 6.07 of the Plan (the "Disputed Claims Reserve").

### 3. Distribution Upon Allowance of Disputed Claims

Except as specifically provided, the holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtors upon the subsequent distribution date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such Distributions shall be made in accordance with the Plan. The Debtor does not anticipate filing any claim objections except as to the Internal Revenue Service as set forth above.

### 4. Expenses of Disputed Claims Reserve

Except as otherwise ordered by the Court, the amount of any reasonable expenses incurred by the Reorganized Debtors on or after the Effective Date with respect to the Disputed Claims shall be paid by the Reorganized Debtors upon approval by the Court.

### E. Executory Contracts and Unexpired Leases

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases. If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection. In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to sections 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed rejected by the Reorganized Debtor as of the Effective Date, except for any executory contract or unexpired lease (i) which is provided for above or that previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the Balloting

Deadline; *provided, however,* that the Reorganized Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected. The Plan Proponents or Reorganized Debtor shall provide notice of any amendments to the Assumption List to the non-Debtor parties to the executory contracts and unexpired leases affected thereby. The listing of a document on the Assumption List shall not constitute an admission by the Plan Proponents or Reorganized Debtor that such document is an executory contract or an unexpired lease or that the Debtor or Reorganized Debtor have any liability thereunder.

1.    **Bar Date for Filing Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**

There are no executory contracts or leases that have been rejected in this case. However to the extent that any claimant believes that they hold an executory contract or unexpired lease, claims arising out of the rejection of the same must be filed with the Court and/or served upon the Debtors or the Reorganized Debtors or as otherwise may be provided in the Confirmation Order, by no later than thirty (30) days after the later of (1) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order, and (iii) notice of an amendment to the Assumption List. Any Claim not filed within such time will be forever barred from assertion against the Debtors, their Estate, the Reorganized Debtors and their property. Unless otherwise ordered by the Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under the Plan. The Debtors shall reserve funds for claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan.

## F. Modification/Revocation of the Plan

Subject to the restrictions on Plan modifications set forth in section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend or modify the Plan before its substantial consummation.

The Debtor further reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. Such withdrawal or revocation shall not prejudice the any rights of the Debtor. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Actions by or against the Debtor or any other Person, an admission against interests of the Debtor, nor shall it prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

The Debtor may modify the Plan and any time before the confirmation of the Plan. However the Court may require a new disclosure statement and/or revoting on the Plan. Moreover any sale or refinancing of ay property set forth in Section IV above will need to be approved by the Court. Any case reopening for this purpose shall not

require a filing fee paid to the clerk of court, although clerk's fees related to the filing of relevant motions, if any, shall continue to apply.

Upon request of the Debtor, the United States trustee, or holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

## G.    Effect of Confirmation

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtor.

### 1.    Continued Corporate Existence

The Debtor is an individual. In that capacity he will, following the Effective Date, be permitted to engage in business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan and the Confirmation Order.

### 2.    Vesting of Assets

Except as otherwise provided in the Plan and the Confirmation Order, on the Effective Date, Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all Claims, liens, encumbrances, charges, and other interests, including but not limited to that of holders of Claims and holders of equity interests. The Reorganized Debtor shall assume all of the Debtor' rights, obligations and liabilities under the Plan.

### 3.    Final Decree

Once the estate has been fully administered, as provided in Fed. R. Bankr. P. 3022, the plan Proponents, or such other party as the Court shall designate in the Plan Confirmation order, shall file a motion with the Court to obtain a final decree to close the case.

## H.    Discharge, Exculpation, Injunction, Release and Limitation of Liability

### 1.    Discharge of Debtor

Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and equity interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and equity interests of any nature whatsoever, including any interest accrued on

such Claims from and after the Commencement Date, against the Debtor and the Debtor in Possession, the Estate, any of the assets or properties under the Plan. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 2.    Administrative closing of the case

The Debtor reserves the right to request that the Court close this bankruptcy proceeding prior to the entry of an order of Discharge, so that it may be reopened, without the need to pay an additional fee to the Clerk of Court, upon the payment of the last payment under the Plan, and so that the Debtors may receive their Discharge at that time.

### 3.    Injunction Related to Discharge

Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtor are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim. Such injunctions shall extend to successors of the Debtor and his respective properties and interests in property.

### 3.    Injunction Against Interference with the Plan

Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.

### 4.    Votes Solicited in Good Faith

The Plan Proponent has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation

governing the solicitation of acceptances or rejections of the Plan.

### 5. Term of Bankruptcy Injunction or Stay

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### I. Retention of Jurisdiction

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a) to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting, therefrom;

(b) to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c) to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor or any other party in interest with standing to do so, pursuant to sections 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d) to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e) to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g) to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Code;

(h) to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Code;

(j)      to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)      to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l)      to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(m)      to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(n)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under section 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

(o)      to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(p)      to hear any other matter not inconsistent with the Code; and

(q)      to enter a final decree closing the Case; provided however, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

## J. Transfers Within Two Years Prior to Petition

The Reorganized Debtor shall retain any and all claims against third-parties, including all claims arising under Chapter 5 of the Bankruptcy Code, including any and all avoidance actions or actions based on fraudulent or preferential transfers that are not dealt with under this Plan.

## K. Miscellaneous Provisions

### 1. Properties bought and sold by the Debtor in the Ordinary Course of Business

The Debtor bought the following properties in the ordinary course of his business dealings during the pendency of this case:

Debtor bought 4126 SE 28th Street, Okeechobee, Florida on July, 2014 for $30,000.00 in the ordinary course of business.  The closing has not yet occurred and

the Debtor has incurred no debt or liability in this transaction as of yet. The seller/financier is awaiting confirmation of a Plan in this case prior to consummating the sale.

2.    **The Following Properties are owned by the Debtor but have no debt owed on them and are owned tenancy by the entireties with her:**

a. Dix Creek, #2 Road, Leichester, NC (TBE Exempt – FMV: $50,000.00

b. 2201 SW 28th Street #79, Okeechobee, Florida (1/3 interest) FMV: $12,000.00

## L.  Reservation of Rights Under Sections 1141(d)(5) and 350(a)

The Debtor reserves the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payment under this Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns. Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties. If such request is granted, then upon the satisfaction of all payments required to be paid inside the Plan, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5). This paragraph only preserves the Debtor's right to seek the relief described above and does not conclusively grant such relief. Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such time as it is requested by the Debtor after confirmation.

# V.  CONFIRMATION OF THE PLAN

## A.    Solicitation of Votes

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Classes above listed as impaired are impaired and the holders of Allowed Claims in those Classes shall be solicited and will receive ballots and are entitled to vote to accept or reject the Plan. An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any insider. A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code.

## B.    Confirmation Hearing

The Bankruptcy Court shall schedule the Confirmation Hearing to consider approval of this Disclosure Statement and confirmation of the Plan before the Honorable Paul G. Hyman, Judge for the United States Bankruptcy Court for the Southern District of Florida, located at the United States Bankruptcy Court, Flagler Waterview Building 1515 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401. The Confirmation

Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing. The Bankruptcy Court shall set forth a deadline to file objections, if any, to the approval of this Disclosure Statement or the confirmation of the Plan.

Any objection to Confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim. Any such objection must be filed with the Court and serviced so that it is received by the Bankruptcy Court and the following parties on or before the deadline set by the Bankruptcy Court:

Merrill PA
Attn: David Lloyd Merrill, Esq.     -and-
2001 Palm Beach Lakes Blvd
Suite 410
West Palm Beach, Florida 33409

Heidi A. Feinman, Esq.
Office of the U.S. Trustee
51 SW First Avenue, Room 1201
Miami, FL 33130

## C. Confirmation Standards and Solicitation of Votes

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of chapter 11 of the Bankruptcy Code. At the Confirmation hearing, the Bankruptcy Court will determine, among other things, whether the Plan has been accepted by each Impaired Class of Creditors. Under Section 1126 of the Bankruptcy Code, an Impaired Class is deemed to have accepted the Plan if at least two-thirds in amount and more than one-half in number of Allowed Claims in such Class voting to accept or reject the Plan have voted in favor of acceptance.

There are two methods by which the Plan can be confirmed: (i) the "acceptance" method in which all Impaired Classes have voted to accept the Plan as described above; and (ii) the "cram-down" method, in which the Plan is not accepted by one or more of the Impaired Classes, provided the Bankruptcy Court finds that the Plan does not discriminate unfairly and is fair and equitable to such Class or Classes. For a Plan to be confirmed under the "non-acceptance" method, it must be accepted by at least one Class of Claims or Interests that is Impaired by the Plan. The Debtor may choose to rely upon the "non-acceptance" method to seek Confirmation of the Plan, if it is not accepted by all Impaired Classes of Creditors.

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm the Plan notwithstanding its rejection by one or more Impaired Class if the Bankruptcy Court finds that the Plan is fair and equitable with respect to each Impaired Class that does not accept the Plan. With respect to Classes of Secured Creditors, the fair and equitable test requires that a Secured Creditor (i) retain its lien or liens and receive cash payments having a present value equal to its Allowed Secured Claim; (ii) receive the proceeds from the sale of its collateral, or (iii) realize the indubitable equivalent of its Claim. With respect to a Class of Unsecured Claims, the fair and equitable test requires that if each Claimant in such Class does not receive property having a present value

34

equal to the amount of such Claimant's Allowed Claim, no junior class can receive any property on account of such junior Claim or Interest. If the Bankruptcy Court orders Confirmation of the Plan, then pursuant to Section 1141(d)(5)(A) of the Bankruptcy Code, the Debtor is discharged from all pre-Confirmation debts except as is provided in the Plan, upon completion all payments required under the Plan.

Notwithstanding the foregoing, pursuant to Section 1141(d)(5)(B) of the Bankruptcy Code, the Debtor reserves the right, upon notice and a hearing, to seek an earlier discharge in the event that the Debtor actually distributes to Allowed Unsecured Creditors the value, as of the Effective Date, of property under the Plan that is greater than the amount that would have been paid on such claim if the estate of the Debtor had been liquidated under Chapter 7 of the Bankruptcy Code. Confirmation makes the Plan binding on the Debtor, all Creditors, Interest Holders, and other parties in interest regardless of whether they voted to accept or reject the Plan.

The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met. As set forth in more detail in the following section, the Plan Proponents believe that the Plan satisfies all of the requirements for confirmation.

## VI. <u>FUNDING AND FEASIBILITY OF THE PLAN, AND RISK FACTORS BEARING UPON THE SUCCESS OR FAILURE OF THE PLAN</u>

### A.    Funding of the Plan

Funds to be used to make cash payments under the Plan shall derive from income of the Debtor.

### B.    Best Interests Test and Liquidation Analysis

With respect to each impaired Class of Claims and Equity Interests, confirmation of the Plan requires that each holder of an Allowed Claim or Equity Interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. To determine what holders of Claims and Equity Interests of each impaired Class would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor' assets and properties in the context of a Chapter 7 liquidation case and the assets were liquidated by a Trustee in bankruptcy. The cash amount that would be available for satisfaction of Claims and Equity Interests would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of the Debtor, augmented by the unencumbered cash held by the Debtor at the time of the commencement of the liquidation case. Such cash amount would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative expenses and priority claims that might result from the termination of the Debtor' business and the use of chapter 7 for the purposes of liquidation.

The cost of liquidation under Chapter 7 would include expenses relating to the wind-down of the business, including computer expenses, consulting expenses, maintenance and repair expenses, plant operations expenses, office expenses, marketing expenses, marketing expenses, payroll expenses and license fees; the fees payable to the Chapter 7 trustee, as well as those fees that might be payable to other professionals that such a trustee might engage. In addition, claims would arise by reason of the breach or rejection of obligations incurred, and leases and Executory Contracts assumed or entered into by the Debtor during the pendency of this Chapter 11 case. The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Claims.

To determine if the Plan is in the best interests of each impaired Class, the present value of the distributions from the proceeds of a liquidation of the Debtor' unencumbered assets and properties, after subtracting the amounts attributable to the foregoing Claims, are then compared with the value of the property offered to such Classes of Claims and Equity Interests under the Plan.

After considering the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 case, including i) the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee, ii) the erosion in value of assets in a Chapter 7 case in the context of the expeditious liquidation required under Chapter 7 and the "forced sale" environment that would prevail, and iii) the substantial increases in Claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Case, the Plan Proponent has determined that confirmation of the Plan will provide each holder of an Allowed Claim with a recovery that is not less than such holder would receive pursuant to liquidation of the Debtor under Chapter 7.

The Liquidation Analysis is attached hereto as Exhibit "B". The information set forth in Exhibit B provides a summary of the liquidation values of the Debtor' assets, assuming a Chapter 7 liquidation in which a trustee appointed by the Bankruptcy Court would liquidate the assets of the Debtor' Estate. Reference should be made to the Liquidation Analysis for a complete discussion.

The Liquidation Analysis was prepared by the Debtor and reflects the Debtor's best estimates of the information set forth therein. However, the Liquidation Analysis includes a number of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant economic and competitive uncertainties and contingencies beyond the control of the Debtor. The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, the values reflected might not be realized if the Debtor was, in fact, to undergo such a liquidation. It should also be noted that the Debtor' plan

36

proposes payment of some allowed general unsecured claims, which could not, by definition and in accordance with the expenses described above, occur in a liquidation scenario.

The Plan Proponent believes that the value of the property offered to holders of under the Plan is greater than the present value of the distributions from the proceeds of a liquidation of the Debtor' unencumbered assets and properties. However, the Plan Proponents' reliance on the Debtor' Liquidation Analysis herein should not be construed as an acknowledgment of the Plan Proponent that either the total figure arrived at or the allocation of claims status to various Insider Claims is appropriate or necessary. The Plan Proponents reserve the right to submit an amended liquidation analysis prior to the Confirmation Hearing.

## C. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a Debtor unless so provided by the plan of reorganization. For purposes of determining whether the Plan meets this requirement, the Plan Proponent has analyzed his ability to meet his financial obligations as contemplated thereunder. As part of this analysis, the Plan Proponent has prepared projections set forth in Exhibit "C" hereto, which the Plan Proponent believes indicates that he will be able to make all payments required to be made pursuant to the Plan. Moreover, the Debtor is cash flow positive. Accordingly, the Plan Proponent asserts that he is able to perform all of his obligations under the Plan, and as such, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## D. Risk Factors bearing upon the success or failure of the plan

While it is impossible to predict and relay all of the factors to creditors which can have a bearing upon the risk of failure of plan, it is important to note that this plan harbors very insignificant risk as related to other individual Chapter 11 cases: the Debtor derives the majority of his income from his rental income from his reorganized real property, which, as has been shown in the Exhibits attached hereto, reflects that they are net cash positive after debt service and escrows. Moreover he enjoys substantial income from his mortgage banking business. As such he is uniquely able to ensure a steady flow of income. Accordingly the risk of failure of completing this plan is deemed to be low.

## VII. <u>ALTERNATIVES TO THE PLAN</u>

Although this Disclosure Statement is intended to provide information to assist a Claim or Interest holder in determining whether to vote for or against the Plan, a summary of the alternatives to confirmation of the Plan may be helpful.

If the Plan is not confirmed and consummated, the alternatives to the Plan include

plan of reorganization; or iii) dismissal of the Chapter 11 Case leaving creditors and interest holders to pursue available non-bankruptcy remedies.

## 1.   Liquidation Under Chapter 7

If no plan is confirmed, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be selected to liquidate the Debtor' assets for distribution in accordance with the priorities established by Chapter 7. As discussed previously, the Plan Proponents believe that liquidation under Chapter 7 would result in smaller distributions being made to Creditors than those provided for in the Plan because i) the Debtor' assets would have to be sold or otherwise disposed of in a forced sale situation over a short period of time, ii) additional administrative expenses would be involved in the appointment of a trustee, and iii) additional expenses and claims, some of which would be entitled to priority, would be generated during the liquidation and from the rejection of leases and other Executory Contracts in connection with a cessation of the Debtor' operations.

## 2.   Alternative Plan of Reorganization

If the Plan is not confirmed, another party in interest could attempt to formulate an alternative plan.  Such a plan might involve either a reorganization and continuation of the Debtor' business income, or an orderly liquidation of his assets.

## 3.   Dismissal of the Chapter 11 Case

If the Chapter 11 Case is dismissed, Creditors would be free to pursue non-bankruptcy remedies in their attempts to satisfy claims against Debtor. However, in that event, Creditors would be faced with the costs and difficulties of attempting to collect claims from either a non-operating entity or an entity in foreclosure from its Secured Creditors.

## CONCLUSION

For all the reasons set forth in the Disclosure Statement, the Plan Proponent believes that confirmation and consummation of the Plan is preferable to all other alternatives. The Plan provides a distribution to all Allowed Creditors in all Classes, which could not occur if this case were dismissed or converted to a Chapter 7 liquidation.  Consequently, the Debtor urges all eligible holders of Impaired Claims and Interests to vote to accept the Plan, and to complete and return their ballots so they will be received on or before the deadline set by the Bankruptcy Court.

**MERRILL PA**

By: *Isl David Lloyd Merrill, Esq.*
David Lloyd Merrill, Esq.
2001 Palm Beach Lakes Blvd, Suite 410
West Palm Beach, Florida 33409
Phone: +1.561.689.6789
**Attorneys for Bartholomew F. Caso**

By: *Bartholomew A. Caso*
Bartholomew F. Caso

Attorneys for Bartholomew F. Caso

## Exhibit A
## Plan of Reorganization

## <u>EXHIBIT B</u>
**Liquidation Analysis for Bartholomew F. Caso**

NET REAL ESTATE VALUE:                          $79,000.00

Value of Non-Exempt Personal Property:       $      0.00


Unencumbered and Oversecured Assets less Exemptions:          **$79,000.00**

Amount proposed to be paid to unsecured creditors:               **$81,000.00**


Percentage paid in hypothetical Chapter 7 liquidation:       7.3%
Percentage proposed to be paid in accordance with
   The plan proposed herein:                                    7.5%

# EXHIBIT C
### Projections and feasibility for Bartholomew F. Caso

Income on the Effective Date

| | | |
|---|---|---:|
| **Social Security** | | **$ 1,197.00** |
| **Social Security (Daughter (minor))** | | **$ 768.00** |
| **Loan Origination income** | | **$ 3,240.00** |
| **Spouse's Monthly Net Income** | | **$ 2,244.66** |
| **Spouse's Note Receivable** | | **$ 1,000.00** |
| **PLUS: Income on 3261 SW 21st Street** | **$ 600.00** | |
| **PLUS: Income on 1610 N Federal Highway** | 1,200.00 | |
| **PLUS: Income on 2901 N Halifax Ave #214** | 850.00 | |
| **PLUS: Income on 1116 SW 10th Street** | 700.00 | |
| **PLUS: Income on 206 S Walnut Street** | 750.00 | |
| **PLUS: Income on 1070 SE 38th TER** | 800.00 | |
| **PLUS: Income on 1183 SE 40th Ave** | 1,000.00 | |
| **PLUS: Income on 1216 SW 5th Ave** | 600.00 | |
| **PLUS: Income on 1807 SW 2nd Ave** | 550.00 | |
| **PLUS: Income on 2201 SW 28th Street #38** | 700.00 | |
| **PLUS: Income on 2418 SW 22nd Cir** | 1,200.00 | |
| **PLUS: Income on 526-532 Orange Dr** | 600.00 | |
| **PLUS: Income on 4132 SE 28th Street** | 500.00 | |
| **PLUS: Income on 3849 S Lake Drive #173** | 550.00 | |
| **PLUS: Income on 3849 S Lake Drive #181** | 550.00 | |
| **PLUS: Income on 4126 SE 28th Street** | <u>250.00</u> | |

**TOTAL INCOME (after taxes):     $ 20,199.66**

| LESS: Expenses: | | |
|---|---|---:|
| | Mortgage payment (PITI) | $2,000.00 |
| | Cable | $ 250.00 |
| | Water | $ 75.00 |
| | Electric | $ 300.00 |
| | Rec & Ent. | $ 50.00 |
| | Food | $ 500.00 |
| | Clothing | $ 300.00 |
| | Auto Insurance | $ 141.00 |
| | Auto Maintenance | $ 200.00 |
| | Gas | $ 240.00 |
| | Insurance | $ 215.00 |
| | Medical/ Dental | $ 350.00 |
| | Telephone | $ 285.00 |
| | Storage fees | $ 450.00 |
| | U.S. Trustee Fee | $ 217.00 |
| | Income Taxes | $ 583.00 |
| | Misc. | <u>$ 50.00</u> |
| **PERSONAL EXPENSES:** | | **$ 6,206.00** |

**LESS: Expenses on 3261 SW 21st Street     $     460.64**

41

| | | |
|---|---|---|
| LESS: | Expenses on 1610 N Federal Highway | 851.84 |
| LESS: | Expenses on 2901 N Halifax Ave #214 | 565.00 |
| LESS: | Expenses on 1116 SW 10th Street | 535.37 |
| LESS: | Expenses on 206 S Walnut Street | 486.12 |
| LESS: | Expenses on 1070 SE 38th TER | 763.88 |
| LESS: | Expenses on 1183 SE 40th Ave | 771.34 |
| LESS: | Expenses on 1216 SW 5th Ave | 314.59 |
| LESS: | Expenses on 1807 SW 2nd Ave | 311.41 |
| LESS: | Expenses on 2201 SW 28th Street #38 | 409.80 |
| LESS: | Expenses on 2418 SW 22nd Cir | 849.20 |
| LESS: | Expenses on 526-532 Orange Dr | 410.79 |
| LESS: | Expenses on 4132 SE 28th Street | 175.76 |
| LESS: | Expenses on 3849 S Lake Drive #173 | 361.19 |
| LESS: | Expenses on 3849 S Lake Drive #181 | 361.19 |
| LESS: | Expenses on 4126 SE 28th Street | 363.29 |

$7,991.41

**TOTAL EXPENSES:**          **$14,197.41**

Adjustment for periodic vacancies:  $1,500.00
Maintenance on Properties:          $3,000.00

**NET INCOME:**                     **$ 1,502.25**

**Proposed plan payment:**          **$ 1,350.00**

## EXHIBIT D
### Most Recently Filed Monthly Operating Report for Bartholomew F. Caso

*NOTE: Budget and Monthly operating Reports ("MoRs") balance when MoR receipts are averaged over time. Various tenants often make partial payments or are late on payments they make up in later months creating this situation.